```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```
_____

SOUTHEAST MENTAL HEALTH CENTER,  )
INC.,                            )
                                 )
     Plaintiff,                  )
                                 )
v.                               )   No. 04-2513 Ml/V
                                 )
PACIFIC INSURANCE COMPANY,       )
LTD.,                            )
                                 )
     Defendant.                  )
_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**
_____

Before the Court is the Motion of Pacific Insurance Company Limited for Summary Judgment, filed December 9, 2005. Plaintiff responded in opposition and filed a cross-motion for partial summary judgment as to liability on January 12, 2006.[1] The parties filed further responses, replies, and sur-replies on February 13, 2006, February 16, 2006, April 3, 2006, and April 5, 2006. For the following reasons, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment, and GRANTS in part and DENIES in part Plaintiff's cross-motion for partial summary judgment.

---

[1] Plaintiff initially filed its response and cross-motion on January 11, 2006 (docket no. 38), but re-filed it the following day (docket no. 41) due to difficulties with electronic filing.

I.  BACKGROUND & UNDISPUTED FACTS

Plaintiff Southeast Mental Health Center, Inc. is a Tennessee not-for-profit corporation that provides outpatient mental health services and substance abuse treatment to Tennessee residents.  Defendant issued an insurance policy, Policy No. ZG 0023267 ("Policy"), to Plaintiff for coverage from February 25, 2003, through February 25, 2004.  The Policy included both an "All Risks" property insurance policy as well as a business interruption policy, entitled "Business Income (Without Extra Expense) Coverage".  The Policy covered Plaintiff's clinics at multiple locations.

On July 22, 2003, a heavy rain and windstorm, commonly referred to as Hurricane Elvis, caused significant damage to Plaintiff's clinic and operations center located at 2579 Douglas Avenue, Memphis, Tennessee ("Douglas Avenue location"). Approximately twenty power and utility poles adjacent to the Douglas Avenue location were blown down or destroyed, which resulted in the loss of electrical and telephone service at that location until August 5, 2003.  Plaintiff asserts that the loss of electricity also damaged its pharmacy computer (located at the Douglas Avenue location), which resulted in the loss of data from the computer.

As a result of this loss of electricity and telephone service, Plaintiff's operations were suspended and it lost

significant business income.  The Douglas Avenue location served as a communications hub for Plaintiff's Summer Avenue and Winchester locations, and also served as the central dispensing pharmacy for all of its 23 locations.  Plaintiff contends that it suffered a loss of income because it was unable to (1) use the Douglas Avenue location or equipment to conduct patient appointments, (2) schedule and confirm appointments, and (3) fill its patients' prescriptions.  Plaintiff admits that its real property did not suffer any physical damage as a result of the storm.  (Dep. Owen Lawrence 43-44.)

Plaintiff submitted an insurance claim to Defendant sometime in late July or early August, 2003, based on its loss of business income.  Defendant notified Plaintiff by letter dated September 16, 2003, that it would not pay the claim.  (Letter from Douglas White, Appendix to Pl.'s Resp., 43-44.)  On November 5, 2003, Plaintiff gave notice to Defendant of its intent to seek relief in court.

Plaintiff seeks payment of its insurance claim by Defendant and also brings claims against Defendant under Tenn. Code Ann. § 56-7-105 for Defendant's bad faith failure to pay the insurance claim and under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq. ("TCPA").  Defendant contends that Plaintiff's claim is not covered under the Policy.  It moves for summary judgment under two theories: first, that Plaintiff's

losses were not caused by direct physical loss of or damage to the insured property and thus are not covered under the Policy; and second, that even if Plaintiff's losses do fall under the Policy, they are precluded by specific exclusions delineated in the policy.  In response, Plaintiff moves for partial summary judgment as to liability, contending that its losses are covered under the All-Risk Policy and that any ambiguities in the Policy must be construed in its favor.[2]

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the

---

[2] Defendant asks the Court to refuse to consider Plaintiff's cross-motion because it was not filed within the time allotted by the scheduling order (docket no. 26) for the filing of dispositive motions.  While the Court recognizes that Plaintiff has failed to comply diligently with the applicable filing deadlines, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).  Defendant has had ample opportunity to present evidence in opposition to Plaintiff's cross-motion.  Further, Plaintiff's motion does not raise any new issues of law or fact, but simply contests the basic premises underlying Defendant's motion.  Accordingly, the Court will examine the merits of Plaintiff's cross-motion.

movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**III. ANALYSIS**

    **A. Law Governing Insurance Contracts**

The parties agree that the insurance policy at issue is governed by Tennessee law. Under Tennessee law, the interpretation of an insurance contract is a matter of law to be determined by the court. Black v. State Farm Mut. Auto. Ins. Co., 101 S.W.3d 427, 428 (Tenn. Ct. App. 2002). An insurance policy is generally to be interpreted as any other contract. Am. Justice Ins. Reciprocal v. Hutchinson, 15 S.W.3d 811, 814 (Tenn. 2000). Insurance contracts should be construed "so as to give effect to the intention and express language of the parties." Blaylock & Brown Construction, Inc. v. AIU Ins. Co., 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). In construing an insurance contract, "the language of the parties should be given its plain and ordinary meaning," Burdett Oxygen Co. of Cleveland, Inc. v. Employers Surplus Lines Ins. Co., 419 F.2d 247, 248 (6th Cir. 1969), and the court must read the insurance contract as a layperson would read it, Paul v. Ins. Co. of N. Am., 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984). Further, "the contract should be read as a whole and each word given its appropriate meaning, if possible." Burdett Oxygen Co. of Cleveland, Inc., 419 F.2d at 248; Mid-South Title Ins. Corp. v. Resolution Trust Corp., 840 F. Supp. 522, 526 (W.D. Tenn. 1993).

An all-risk insurance policy "automatically covers any loss

unless the policy contains a provision expressly excluding the loss from coverage" and generally covers against all fortuitous losses. HCA, Inc. v. Am. Protection Ins. Co., 174 S.W.3d 184, 187 (Tenn. Ct. App. 2005). Under an all-risk policy, the claimant has the initial burden of proving that a loss comes within the terms of the policy, Blaine Constr. Corp. v. Ins. Co. of N. Am., 171 F.3d 343, 349 (6th Cir. 1999)(quoting Farmers Bank & Trust Co. of Winchester v. Transamerica Ins. Co., 674 F.2d 548, 550 (6th Cir. 1982)), but the burden is upon the insurer to show that an exclusion applies which precludes recovery, id. Exclusionary clauses are to be strictly construed against the insurer. Mid-South Title Ins. Corp., 840 F. Supp. at 526. Where contract language is ambiguous, "the ambiguity must be resolved in favor of the insured." Farmers Chem. Ass'n v. Maryland Cas. Co., 421 F.2d 319, 321 (6th Cir. 1970). However, the court must be careful not to create ambiguity where none exists. Blaylock & Brown Construction, Inc., 796 S.W.2d at 149.

**B. Coverage under Business Interruption Provision**

Plaintiff brings two claims for coverage, both under the Policy's business interruption provision. First, Plaintiff claims that it is entitled to coverage for its loss of income due to the power outage, which caused Plaintiff to close its facilities at the Douglas Avenue location and impeded service at the Winchester and Summer Avenue locations for two weeks.

7

Plaintiff also seeks to recover for lost business income due to the damage to its pharmacy computer and its inability to fill patients' prescriptions.

**1. The Policy**

The Policy provides coverage for both property loss and losses due to business interruption. The first page of the Policy is the "All Risk Form Declarations Page." That page lists "INTEREST & PROPERTY COVERED" as follows:

> Real Property as described in Item 1 (a), Page 1
> Personal Property as described in Item 1(b), Page 1
> Business Interruption as described in form specifically endorsed hereon.

(All Risk Form Declarations Page, C-70-3 (3/03).) The "All Risk Form" sets forth the terms of its coverage as follows:

> This Policy insures against All Risk of direct physical loss or damage from any external cause to the property insured when caused by a peril not excluded elsewhere in this Policy, the occurrence of such loss or damage being during the policy period.

(All Risk Form, C-70 (4/2001) ("All Risk Form") § 2 PERILS INSURED AGAINST, at 1.) The All Risk Form also lists a number of perils that might cause damage to insured property that are specifically excluded from coverage. These include:

> (o) interruption of business . . . unless endorsed hereon;
> . . .
> (r) power interruption or power failure;
> . . .
> (w) failure, malfunction or inadequacy of computer hardware . . . .

(All Risk Form, § 5 PERILS EXCLUDED, at 3-4.)

In addition, the Policy includes coverage for losses occasioned by business interruption.  The "Business Income (Without Extra Expense) Coverage Form" states:

> We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'.  <u>The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations</u> and for which a Business Income Limit of Insurance is shown in the Declarations.  The loss or damage must be caused by or result from a Covered Cause of Loss.

(Business Income (Without Extra Expense) Coverage Form, CP 00 32 10 00 ("Business Income Form"), ¶ A)(emphasis added).

The "All Risk Form Declarations Page" lists a summary of the insurance coverage and refers to form MP 1205 for the "Description & Location."  (All Risk Form Declarations Page, C-70-3 (3/03).)  Form MP 1205, entitled "Supplemental Declarations Endorsement," lists the addresses of covered properties and the coverage available for each property.  (Supplemental Declarations Endorsement, MP 1205, at 1.)  The Supplemental Declarations Endorsement form notes that the Douglas Avenue location has insurance coverage for "BUILDING," "CONTENTS," and "BUSINESS INCOME W/O EXTRA EXPENSE."  (<u>Id.</u>)

### 2. Lost Business Income Due to the Closure of Plaintiff's Facilities

Defendant first contends that Plaintiff's losses were not within the scope of the Policy's coverage, because the suspension of Plaintiff's operations "were not caused by direct physical

9

damage to the property." (Answer ¶ 8 (citing Business Income Form, ¶ A).) Accordingly, the Court must determine whether Plaintiff's losses, due to the electrical and telephone outages, were caused by "direct physical loss of or damage to property" at the insured premises.

The Court finds the language in the Policy to be plain and unambiguous. Case law construing this exact language in insurance contracts supports the proposition that the words "direct physical" modify both "loss of" and "damage to." See e.g., Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co., 114 Cal. App. 4th 548, 554 (Cal. App. 2003). In the instant matter, it is undisputed that the electrical and telephone outages were caused by damage to power and utility lines that were not located on Plaintiff's property. The Court finds that the power outage therefore does not constitute "direct physical loss of or damage to" Plaintiff's property.

The cases cited by Plaintiff are unavailing. Plaintiff points to Pressman v. Aetna Cas. & Surety Co., 574 A.2d 757 (R.I. 1990), where the court allowed recovery for business losses due to a power outage that occurred when a tree fell on a power line adjacent to the plaintiff's property. However, in Pressman, there was no language in the insurance policy limiting coverage to direct physical loss or damage. Instead, the Pressman court found coverage based on its interpretation of an exclusion in the

10

policy that prevented coverage for power outages taking place away from described premises. Id. at 759-60.

Similarly, in McMahon Books, Inc. v. Nationwide Property & Cas. Ins. Co., 1993 WL 1303168 (Del. Com. Pl. 1993), the court allowed recovery for the plaintiff's business losses caused by a power interruption at its bookstore which was located in a shopping mall. The power loss was caused by damage to electrical equipment owned by the bookstore's landlord and located in a different section of the shopping mall. However, in finding that the plaintiff's losses were covered, the McMahon court relied on a provision in the policy that specifically limited coverage for failure of power "if the failure occurs away from the described premises." Id. at *1-2. As the policy in the instant case does not contain such a limitation, McMahon is inapplicable. The Court thus finds no authority to support Plaintiff's construction of the plain language of the Policy, and concludes that Plaintiff's losses due to the electrical and telephone outages were not caused by "direct physical loss of or damage to property" to the insured premises. Accordingly, the Court GRANTS Defendant's motion for summary judgment on this issue and DENIES Plaintiff's motion for partial summary judgment.

### 3. Lost Business Income Due to Loss of Computer

Defendant also contends that Plaintiff's business losses due to the damage to its pharmacy computer are not covered because there was no direct physical damage to the computer and because losses due to power failure or to failure of computer systems are specifically excluded under the Policy. As set forth below, the Court finds Defendant's contentions to be without merit.

The Court finds that the corruption of the pharmacy computer constitutes "direct physical loss of or damage to property" under the business interruption policy. In a case similar to the one at bar, <u>Am. Guar. & Liab. Ins. Co. v. Ingram Micro, Inc.</u>, 2000 WL 726789 (D. Ariz. 2000), a wholesale distributor of microcomputer products, Ingram, suffered a power outage at its data center. Ingram processed all of its orders through its computer system, which was located at the data center. Power was restored within half an hour, but a number of Ingram's mainframe computers lost information and had to be reprogrammed. Additionally, several custom configurations were lost even after power was restored and had to be reprogrammed. These technical difficulties impeded Ingram's ability to conduct business. Ingram had insurance covering "All Risks of direct physical loss or damage from any cause."

The <u>Ingram</u> court found that Ingram's computer system had sustained direct physical damage. The court stated that

"'physical damage' is not restricted to the physical destruction or harm of computer circuitry but includes loss of access, loss of use, and loss of functionality." Id. at *2. The computers "physically lost programming information and custom configurations necessary for them to function" when they were damaged by the power outage. Id. at *3. The Court finds the Ingram court's reasoning persuasive, and finds that Plaintiff's pharmacy computer sustained direct physical damage, within the meaning of the business interruption provision.

However, in order to obtain coverage under this provision, Plaintiff's loss must also "be caused by or result from a Covered Cause of Loss." (Business Income Form ¶ A.) The Business Income Form includes a provision entitled "Covered Causes Of Loss," which states, "See applicable Causes of Loss Form as shown in the Declarations." (Id. at ¶ A(2).) However, there is no "Causes of Loss Form" in the All Risk Form Declarations Page or elsewhere in the Policy. The All Risk Form Declarations Page notes that the Policy provides coverage for "Business Interruption as described in form specifically endorsed hereon," (All Risk Form Declarations Page C-70-3 (3/03),) and the Supplemental Declarations Endorsement lists CP 00 32 10 00 (the Business Income Form) as the only form applicable to business income coverage, (Supplemental Declarations Endorsement at 1.)

The Sixth Circuit considered a similar insurance policy in

13

<u>Burdett Oxygen Co. of Cleveland, Inc. v. Employers Surplus Lines Ins. Co.</u>, 419 F.2d 247 (6th Cir. 1969).  In <u>Burdett</u>, the plaintiff's policy included all-risk coverage, as well as a second section that insured against business interruption. Plaintiff suffered a mechanical breakdown, which caused its facility to be shut down until the machinery could be repaired. The business interruption provision of the policy provided coverage for business interruption and extra expense related thereto "caused by damage to . . . property . . . by the perils insured against."  <u>Id.</u> at 248.  The insurance company argued that this provision covered only business interruptions that were caused by a loss to property recoverable under the property section of the policy, and, therefore, plaintiff's recovery was precluded because mechanical breakdowns were not recoverable under the property section.

The Sixth Circuit found that "[t]he language of the contract does not unambiguously condition recovery on the presence of insured property damage under the basic [all-risks] policy . . . . Therefore, . . . we hold that ambiguous language is to be construed strictly against the insurance company."  <u>Id.</u> at 250. In construing the language against the insurance company, the court found that the contract could be interpreted to require only (1) a loss caused by damage to property and (2) that the loss be caused by a peril insured against.  <u>Id.</u> at 248.  Under

14

this construction, the court found that the plaintiff was entitled to recover for its losses under the policy.

In this case, the Policy is similarly ambiguous as to whether it conditions recovery under the business interruption section on a property loss recoverable under the All Risk section.  The Court finds it ambiguous whether the exclusions in the All Risk form apply to the business interruption insurance, or whether Plaintiff's loss is a Covered Cause of Loss.  There is no reference to C-70, the All Risk Form, in the Business Income Form nor in any other provision relating to business interruption coverage.  Further, the All Risk Form makes no mention of business interruption insurance, other than listing "interruption of business" as a Peril Excluded, "unless endorsed hereon," and business interruption insurance is clearly "endorsed" on the Business Income Form.

In addition, certain provisions of the All Risk Form are inconsistent with provisions of the Business Income Form.  The Business Income Form states:

> 3. Limitation – Electronic Media And Records
> We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:
>   a. 60 consecutive days from the date of direct physical loss or damage; or
>   b. The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

(Business Income Form, ¶ D(3).)  Accordingly, the Business interruption coverage contemplates coverage for business losses due to the loss of electronic media for a limited amount of time. In contrast, the All Risks Form contains an exclusion from coverage for electronic media, namely "failure, malfunction or inadequacy of computer hardware, microprocessors, computer application software, computer operating systems . . . ."  Under the All Risks Form, coverage for electronic media is only available "unless loss or damage from a peril insured herein ensues."

Construing this ambiguity in favor of the insured, Farmers Chem. Ass'n, 421 F.2d at 321, the Court finds that a power outage could reasonably be considered a Covered Cause of Loss under the business interruption portion of the Policy.  Because the suspension of Plaintiff's business was caused by "direct physical loss of or damage to property" at the premises, and the loss or damage was caused by a Covered Cause of Loss, Plaintiff is entitled to coverage due to the failure of its pharmacy computer. Accordingly, Plaintiff's motion for partial summary judgment is GRANTED as to coverage for business losses relating to the loss of the pharmacy computer[3], and Defendant's motion for summary

---

[3] Plaintiff's coverage under this provision is limited to its loss of income related to pharmacy sales.  Plaintiff admits that the pharmacy computer was a stand-alone computer, which was not connected to the computers utilized in the other parts of its

judgment is DENIED as to this point.[4]

### C. Spoliation of Evidence

Finally, Defendant contends that the Court should prohibit Plaintiff from introducing evidence regarding the damage to the pharmacy computer because one of Plaintiff's employees discarded the damaged drive in July or August of 2004.  Howard Hicks, one of Plaintiff's employees, testified at his deposition that he tested the disk drive soon after the storm, and that the drive was corrupted.  Hicks was the only person who tested or evaluated the drive.  Further, he testified that the drive "sat on the shelf for almost a year . . . and ultimately I disposed of it."  (Dep. Howard Hicks 98.)  Defendant contends that "Southeast was at the very least grossly negligent in failing to preserve material evidence to pending litigation" and accordingly is liable for spoliation of evidence.  (Mem. Supp. Mot. Summ. J. 13.)

"The doctrine of spoliation of evidence permits a court to draw a negative inference against a party that has intentionally,

---

business.  (Lawrence Dep. 82; Dillon Dep. 41-42.)  Additionally, Plaintiff admits that the pharmacy was a distinct part of its business and that its pharmacy employees were not part of the rest of the clinic staff.

[4] Defendant also contends that Plaintiff is not entitled to coverage for these losses because Plaintiff does not know why the computer failed.  Plaintiff admits that it is uncertain whether the computer was damaged when power went out, when it was restored, or when Plaintiff attempted to "power up" with a generator.  (Lawrence Dep. 94.)  However, the timing of the failure is irrelevant, as it is clear that the computer sustained direct physical damage as a result of the power outage.

and for an improper purpose, destroyed, mutilated, lost, altered, or concealed evidence." Bronson v. Umphries, 138 S.W.3d 844, 854 (Tenn. Ct. App. 2003). The inference is rebuttable and "arises only when the spoliation occurs in circumstances indicating fraud and a desire to suppress the truth. It does not arise when the destruction was a matter of routine with no fraudulent intent." McLean v. Bourget's Bike Works, Inc., 2005 WL 2493479, *4 (Tenn. Ct. App. 2005).

    The Court finds no evidence to suggest that Plaintiff disposed of the drive in order to improperly conceal the drive or the cause of its failure from the Court or from Defendant. Plaintiff kept the damaged drive for approximately one year. Defendant points to no evidence to suggest that it ever requested that Plaintiff make the drive available to its experts for examination, either during the year that Plaintiff was in custody of the drive, or anytime thereafter.[5] Plaintiff contends that it disposed of the drive as part of routine clean-up and that it was Hick's sole decision to destroy the drive. (Dep. Hicks 102.) The Court finds no indication that Plaintiff disposed of the drive in an attempt to prevent Defendant from ascertaining the cause of the computer damage. Without more, the Court declines

---

[5] The Court notes that Hicks disposed of the drive in August 2004, only one month after the complaint in the instant suit was filed. However, at the time Hicks disposed of the drive, Defendant had been investigating Plaintiff's insurance claim for approximately one year and had notice of Plaintiff's intent to file a civil lawsuit since November 2003.

to exclude any evidence pertaining to the damage to the pharmacy computer on the basis of spoliation.

**IV. CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is GRANTED as to Plaintiff's claims for loss of business income due to the closure of its facilities, but DENIED as to the loss of income due to the damaged pharmacy computer.  Plaintiff's motion is DENIED as to the loss of business income due to the closure of its facilities, but GRANTED as to its loss of income due to the damaged computer drive.  The Court makes no ruling as to Plaintiff's claims under Tenn. Code Ann. § 56-7-105 or under the Tennessee Consumer Protection Act.

So ORDERED this 20th day of July, 2006.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE